620 A.2d 697

HOOSIER ENGINEERING COMPANY and Hartford Insurance Company, Insurance Carrier, Petitioners,

v.

WORKMEN'S COMPENSATION APPEAL BOARD (WINTERS), Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Oct. 21, 1992.

Decided Feb. 2, 1993.

230

David P. Andrews, for petitioners.

Ronald E. Archer, for respondent.

Before CRAIG, President Judge, and DOYLE, COLINS, McGINLEY, SMITH, PELLEGRINI and FRIEDMAN, JJ.

SMITH, Judge.

■ Hoosier Engineering Company and its insurance carrier, Hartford Insurance Company (collectively, Hoosier) appeal from the order of the Workmen's Compensation Appeal Board (Board) which affirmed the referee's decision granting the claim petition filed by Marvin U. Winters (Claimant) and ordering Hoosier to pay Claimant total disability benefits pursuant to Section 108(k) of The Pennsylvania Workmen's Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended,* added by Section 1 of the Act of October 17, 1972, P.L. 930, 77 P.S. § 27.1(k).[1] The issues raised by Hoosier are whether under Section 301(c)(2) of the Act, 77 P.S. § 411(2), the liable employer is that employer providing the longest period of employment or the longest period of exposure to

1. Although the Board and the referee refer to Claimant's claim petition as filed under Section 108(n), which is an omnibus provision covering any occupational diseases not listed elsewhere, the parties stipulated that Section 108(k) is applicable to this matter. Section 108(k) lists the following as an occupational disease: "[s]ilicosis in any occupation involving direct contact with, handling of, or exposure to the dust of silicon dioxide."

hazards of the claimed disease; and whether the referee's findings are supported by substantial evidence.[2]

On February 29, 1988, Claimant filed a claim petition against Hoosier alleging that he was totally disabled due to silicosis resulting from exposure to dust while working as a drilling and blasting operator for Hoosier. At hearings in this matter, Claimant testified and presented the medical report of his physician to support his claim against Hoosier. Hoosier did not present testimony of any witnesses and stipulated that Claimant was totally disabled and that he was exposed to the hazards while employed by Hoosier in 1983. The referee made the following pertinent findings of fact:

7. The claimant was employed as a blaster/dynamite man from 1964 through November, 1983, which, at times, involved working in a hole, below ground level, drilling holes in rocks and setting dynamite for blasting. The claimant was exposed to a severe silica and rock dust hazard while actually working as a blaster/dynamite man.

8. During the 300 week period prior to his disability on September 29, 1987, the claimant had not worked for the defendant, Hoosier Engineering Company for a period of one year.

9. The claimant last worked for the defendant, Hoosier Engineering Company, as a blaster/dynamite man. He would work down in a hole below ground level, drill holes in rocks and set the dynamite. He performed this type of work for this defendant from August 8, 1983 through November, 1983 during which period he was exposed to heavy concentrations of silica and rock dust.

10. The claimant was employed by the defendant, Hoosier Engineering Company, from November, 1983 to January 19, 1984. He worked as a truck driver; and during this

2. This Court's scope of review is limited to determining whether necessary findings of fact are supported by substantial evidence, whether an error of law was committed or whether constitutional rights were violated. *Russell v. Workmen's Compensation Appeal Board (Volkswagen of America)*, 121 Pa.Commonwealth Ct. 436, 550 A.2d 1364 (1988).

period of employment, he was not exposed to a silica or rock dust hazard.

. . . .

13. After reviewing all of the testimony and employment evidence presented, your Referee finds that the defendant, Hoosier Engineering Company, provided the longest total period of employment during which the claimant was exposed to a severe silica and rock dust hazard, in the 300 week period prior to his disability on September 29, 1987.

. . . .

20. Your Referee finds as a fact that as of September 29, 1987, the claimant was totally disabled due to silicosis, which resulted from the accumulative effect of his exposure to a silica and rock dust hazard during the entire period of time that he was employed and performing the duties of a blaster/dynamite man out of the Union Hall for various companies, beginning in 1964 through his last hazardous employment with Hoosier Engineering company in November, 1983. The date of September 29, 1987 is the date of Dr. Begley's examination and evaluation of the claimant.

Based upon these findings, the referee awarded Claimant total disability benefits to be paid by Hoosier, concluding that Hoosier is the responsible employer under Section 301(c)(2) of the Act. On appeal, the Board affirmed the referee's decision.

Section 301(c)(2) of the Act provides in pertinent part:
The employer liable for compensation provided by ... section 108, subsections (k), (l ), (m), (o), (p) or (q), shall be the employer in whose employment the employe was last exposed for a period of not less than one year to the hazard of the occupational disease claimed. In the event the employe did not work in an exposure at least one year for any employer during the three hundred week period prior to disability or death, the employer liable for the compensation shall be *that employer giving the longest period of employment in which the employe was exposed to the hazards of the disease claimed.* (Emphasis added.)

Hoosier contends that the Board and the referee misconstrued the language in Section 301(c)(2) in concluding that Hoosier is

the liable employer.[3]  Hoosier argues that in determining the liable employer, only the length of employment, not the length of actual exposure during the employment, must be considered; and since Claimant's testimony during cross-examination demonstrates that he was exposed to silica dust during two separate employments for eight months with another employer, H.P. Foley (Foley), from May 1982 to October 1982 and from May 1983 to August 1983 while he was exposed during only five months of the employment with Hoosier, Foley is the responsible employer.[4]  On the other hand, Claimant maintains that the liable employer under Section 301(c)(2) should be determined by the length of exposure during the employment.

To ascertain the meaning of the language in question, this Court must examine Section 301(c)(2) in view of the statutory construction principle which mandates that provisions of a statute be interpreted with reference to the context in which they appear. *Consulting Engineers Council of Pennsylvania v. State Architects Licensure Board,* 522 Pa. 204, 560 A.2d 1375 (1989); *see also* Section 1932(a) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1932(a), which provides that "[s]tatutes or parts of statutes are in pari materia when they relate to the same persons or things or to the same class of persons or things."

Hoosier's contention that only the length of employment must be considered in determining the liable employer under Section 301(c)(2) totally disregards the fundamental rule of statutory construction under which it is presumed that the legislature does not intend a result which is absurd and unreasonable.  Section 1922(1) of the Statutory Construction Act, 1 Pa.C.S. § 1922(1); *Boettger v. Loverro,* 526 Pa. 510, 587

**3.**  The parties agree that Claimant was not employed within 300 weeks prior to his disability by any employer which exposed him for one year or more to the hazards.

**4.**  Claimant filed the claim petition only against Hoosier which had the right to join Foley as an additional defendant within fifteen days after the first hearing pursuant to 34 Pa.Code §§ 131.25–131.26, which was then in effect. *Blue Bell Printing v. Workmen's Compensation Appeal Board (Montgomery Publishing Co.),* 115 Pa.Commonwealth Ct. 203, 539 A.2d 933 (1988).  However, Hoosier failed to do so.

A.2d 712 (1991). Theoretically, the construction of Section 301(c)(2) urged by Hoosier would impose liability on an employer providing eleven months of employment with one day of exposure to silica hazards and absolve an employer providing ten months and twenty-nine days of employment with daily exposure to silica hazards. It is apparent that such an anomaly was not intended by the legislature.

In *Horne v. Workmen's Compensation Appeal Board (Owens–Corning Fiberglas, A C & S, Inc.)*, 98 Pa.Commonwealth Ct. 541, 512 A.2d 765 (1986), *appeal denied*, 517 Pa. 609, 536 A.2d 1333 (1987), this Court concluded that the claimant gave timely notices of occupational disease to the employers but remanded the case to the Board to determine in whose employ the claimant "was longer exposed to asbestos." *Id.* 98 Pa.Commonwealth Ct. at 556, 512 A.2d at 772. Although the issue raised by Hoosier in the matter sub judice was not before this Court in *Horne*, the remand for a determination of the length of exposure to the hazards during employment with each employer supports the construction of Section 301(c)(2) that the responsible employer is the one which subjected the employee to an exposure for the longest period. Further, in *Adams Steel Erection, Inc. v. Workmen's Compensation Appeal Board (Klavonick)*, 117 Pa.Commonwealth Ct. 290, 543 A.2d 241 (1988), this Court, in explaining Section 301(c)(2), reiterated that the "liable employer is that which exposed the claimant for more than one year or more, if such employer exists, 'and if not ... the employer with *the longest period of exposed employment* of less than one year's duration' within the 300–week period prior to disability." *Id.* at 297, 543 A.2d at 245 (quoting *Barna v. Workmen's Compensation Appeal Board (Rochester & Pittsburgh Coal Co.)*, 103 Pa.Commonwealth Ct. 536, 541–42, 520 A.2d 1234, 1237 (1987), *appeal granted*, 517 Pa. 627, 538 A.2d 879 (1988), *appeal discontinued*, No. 4 W.D. Appeal Docket 1988, February 8, 1988) (emphasis added).[5]

5. *Barna*, cited as support by Hoosier, is inapposite because the issue was whether under Section 301(c)(2) of the Act which limits its applica-

The referee concluded that Hoosier provided the longest period of employment during which Claimant was exposed to silica dust during the 300–week period from December 29, 1981 to September 29, 1987, the date of his disability. Claimant's testimony on cross-examination reveals the following:

Q. Could you tell us in which of these did you have exposure to dust when you were doing drilling or blasting?

A. These two right here.

Q. H.P. Foley from May 2, 1983 to August 3, 1983. You did drilling there, and May 17, 1982 to October 22, 1982?

A. Yes. Do you want me to explain that?

Q. Yes.

A. H.P. Foley, when I went to Hoosier in 1983, they opened up seventeen miles of power lines. They went ahead and dug so I drilled day in and day out, nothing else. When I worked for H.P. Foley, I worked for the digging crew. The only time, you might go a week and only have to drill once, if they hit rock once a week. You may have to drill every day for a week. That's the way—drilling wasn't continuous. That was both jobs. The job in 1982, there wasn't nearly as much blasting in that job as there was in the one in 1983.

Q. The job in 1983, you have already testified, the one with Hoosier you drilled for two or three months starting in August, 1983?

A. Yes.

October 18, 1989 Hearing, N.T., pp. 17–18. Claimant further testified on redirect examination:

Q. In connection with your last job with Hoosier Engineering, you started to describe the density of the dust and so forth, were you referring to the Hoosier Job?

A. Yes.

Q. The most recent job where you did drilling?

tion to "the disability or death of an employe which results in whole or in part from the employe's exposure to the hazard of occupational disease after June 30, 1973 ...," one must look beyond the 300–week period prior to the claimant's disability to determine the employer in whose employment the claimant was last exposed to the hazards for a period of not less than one year.

236

A. I was referring to the job at Coraopolis in 1983. From September to, actually I was the dynamite man from September 8th to sometime in November when they brought in another dynamite man and changed my job status from dynamite to material man.

Q. That is where you were talking about the dense drilling?

A. Yes.

Q. The exposure day in and day out?

A. Yes.

*Id.* at 22.

It is within the province of the referee, in evaluating evidence, to accept or reject testimony of any witness in whole or in part. *Kraemer v. Workmen's Compensation Appeal Board (Perkiomen Valley School Dist.),* 82 Pa.Commonwealth Ct. 469, 474 A.2d 1236 (1984). In reviewing the referee's findings of fact, this Court is not to weigh evidence, but is merely to determine whether the record contains evidence which a reasonable person might find sufficient to support the referee's findings. *Lewis v. Commonwealth,* 508 Pa. 360, 498 A.2d 800 (1985). Since the referee's findings in this matter are supported by substantial evidence, they may not be disturbed on appeal. Accordingly, the order of the Board is affirmed.

## ORDER

AND NOW, this 2nd day of February, 1993, the order of the Workmen's Compensation Appeal Board dated July 26, 1991 is affirmed.

DOYLE, Judge, dissenting.

I respectfully dissent.

Under Section 301(c)(2) of The Pennsylvania Workmen's Compensation Act (Act),[1] the employer liable for the payment of benefits is "that employer giving the *longest period of*

1. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 411(2)

*employment* in which the employe was exposed to the hazards of the disease claimed."

I believe the proper reading of this language of the Act requires that liability be imposed on the employer providing the "longest period or term of *employment,*" a quantitive standard, and not, as the majority interprets the language, the employer who provided the longest period of *exposure,* a qualitative measurement.

Section 301(c)(2) of the Act provides in pertinent part:

[W]henever occupational disease is the basis for compensation, for disability or death under this act, it shall apply only to disability or death resulting from such disease and occurring within three hundred weeks after the last date of last employment in an occupation or industry to which [the employe] was exposed to hazards of such disease: And provided further, That if the employe's compensable disability has occurred within such period, his subsequent death as a result of the disease shall likewise be compensable. The provisions of this paragraph (2) shall apply only with respect to the disability or death of an employe which results in whole or in part from the employe's exposure to the hazard of occupational disease after June 30, 1973 in employment covered by the [Act]. The employer liable for compensation provided by ... section 108, subsections (k), (*l* ), (m), (*o*), (p) or (q), shall be the employer in whose employment the employe was last exposed for a period of not less than one year to the hazard of the occupational disease claimed. *In the event the employe did not work in an exposure at least one year for any employer during the three hundred week period prior to disability or death, the employer liable for the compensation shall be that employer giving the longest period of employment in which the employe was exposed to the hazards of the disease claimed.* (Emphasis added.)

77 P.S. § 411.

A brief review of Claimant's employment history would be helpful in analyzing Section 301(c)(2). From 1964 through November, 1983, Claimant worked out of his union hall (Local 126, IBEW) as and when needed and called by various em-

ployers.  During this time period, he was often employed as a blaster/dynamite man, and was exposed to severe silica and rock dust hazards while working in this capacity.  During one segment of his employment Claimant worked for the Hoosier Engineering Company (Hoosier) from August 8, 1983 through January 19, 1984.  However, from August 8 through November of 1983 he worked as a blaster and dynamite man, which exposed him to heavy concentrations of silica and rock dust, while he worked only as a truck driver for Hoosier from November 1983 to January 19, 1984, which did not expose him to silica or rock dust.

To best illustrate the critical time periods in this case, the following chronological chart is presented.[2]  Claimant's employment with Hoosier and with H.P. Foley during the critical 300–week period prior to his disability is highlighted for emphasis.

### Pertinent Work Experience

| | | | |
|---|---|---|---|
| Hoosier Eng. Co. | 9/24/79 | to | 1/18/80 |
| T.D. Bross | 1/28/80 | to | 7/03/80 |
| Hoosier Eng. Co. | 9/16/80 | to | 2/20/81 |
| H.P. Foley | 4/13/81 | to | 10/16/81 |
| Hoosier Eng. Co. | 10/19/81 | to | 12/11/81 |

12/29/81:  300 weeks prior to the date of disability

| | | | |
|---|---|---|---|
| H.P. Foley | 5/17/82 | to | 10/22/82 |
| H.P. Foley | 5/02/83 | to | 8/03/83 |
| Hoosier Eng. Co. | 8/08/83 | to | 1/19/84 |
| L.E. Myers | 6/25/84 | to | 9/21/84 |
| Power Const. | 5/20/85 | to | 7/19/85 |
| Power Const. | 9/23/85 | to | 10/04/85 |
| Albarell | 8/08/86 | to | 10/17/86 |

9/29/87:  Date of Disability

---

2.  This chronology is taken from a letter dated September 30, 1987, sent to Claimant by IBEW (which was accepted by both parties) which details Claimant's occupational history from 1964 through his last date of employment on October 17, 1986, with Albarell Electric.  Claimant indicated by placing "check" marks on this exhibit that he worked for both H.P. Foley and Hoosier Engineering Co. as a dynamite man. (R.R. 47a).

Although the referee made no findings with regard to Claimant's employment with H.P. Foley, both Hoosier and Claimant agree that, within the applicable 300-week period, Claimant worked for H.P. Foley from May 17, 1982 to October 22, 1982 (approximately five months) and again from May 2, 1983 to August 3, 1983 (approximately three months) for a total of eight months. In addition, Claimant testified that he was involved in drilling and blasting operations with H.P. Foley during both time periods and was exposed to silica dust, but that the *amount* of blasting/drilling was less than with Hoosier and, consequently, that his *degree* of exposure was less with H.P. Foley than his exposure with Hoosier (N.T. 17-18, Hearing of October 18, 1989). Since the referee found that Claimant was not exposed to silica dust at all during the period he worked for Hoosier as a truck driver, his conclusion to place liability on Hoosier, therefore, was made by simply comparing three months of *heavy* concentrations of silica dust with Hoosier with eight months of *lighter* exposure with H.P. Foley. Contrary to what the majority implies, the referee never made a finding that Claimant was exposed for a longer period of time with Hoosier than with H.P. Foley.

Furthermore, there is an absolute void in the record of any medical testimony or other evidence that Claimant's exposure while at Hoosier was in any way materially more causative of Claimant's disease than his exposure while working for H.P. Foley. By either reasoning therefore, either by the actual *time* of exposure, or, by the *degree* of exposure, the referee's decision is flawed.

Because it is undisputed that Claimant was not employed by any employer for one year or longer within 300 hundred weeks prior to his disability, the last sentence of Section 301(c)(2) controls. Accordingly, during the applicable 300-week period, Claimant worked for Hoosier approximately five months, but he worked for H.P. Foley (and was also exposed to the hazard) for approximately eight months; which means that the longer period of employment was with H.P. Foley and not Hoosier.

In my view, by construing the statute to mean that the focus should be on the *length* of employment with some exposure

however slight (but a contributing factor to the disease) a simplicity of application is achieved. Time computation of when a claimant held a certain job is easily accomplished. On the other hand, by construing the statute to mean that the focus should be on the *degree or quality* of exposure, the employer who might be more likely to have caused or facilitated the claimant's disease is held responsible. But, apportioning the myriad degrees of exposure and attempting to calculate the percentage of injury which each exposure has had on a claimant, is fraught with medical and scientific uncertainty, if not impossibility. *See Maher ·v. Workmen's Compensation Appeal Board (B.P. Oil Corp.),* 125 Pa.Commonwealth Ct. 411, 558 A.2d 138 (1989).

The majority suggests that interpreting Section 301(c)(2) to impose liability on an employer based on length of employment, rather than length of exposure, could lead to results not intended by the Legislature. According to the majority, under this interpretation, liability could be imposed upon an employer providing eleven months of employment with one day of exposure to silica hazards and absolve an employer providing ten months of employment with daily exposure to silica hazards. The majority contends that the Legislature could not have intended such a result. To the contrary, I believe that that is *exactly* what the General Assembly intended when it added this provision to the Act in 1974 [3] after having added occupational diseases as a covered "injury" in 1972.[4]

This Court, in gleaning the legislative intent of the current version of Section 301(c)(2), has already rejected the argument

---

**3.** Act 263 of 1974, the Act of December 5, 1974, P.L. 782, added the last two critical sentences to Section 301(c)(2). They were added to the Act after two years of experience attempting to fix liability on employers who provided only marginal employment after June 30, 1973, where claimants had worked for long periods of time for different employers prior to that date.

**4.** Act 223 of 1972, the Act of October 17, 1972, P.L. 930, added Subsection 2 to Section 301(c) and brought occupational diseases under the coverage of The Pennsylvania Workmen's Compensation Act in addition to the coverage already provided by The Pennsylvania

that degree of exposure or the number of days of exposure should control determinations of employer liability. In *Marcucci v. Workmen's Compensation Appeal Board (B.P. Oil Corp.)*, 98 Pa.Commonwealth Ct. 7, 510 A.2d 1262 (1986), *petition for allowance of appeal denied*, 515 Pa. 586, 589, 527 A.2d 545, 548 (1987), we were asked to construe the provision in Section 301(c)(2) which precludes any recovery at all against a pre-June 30, 1973 employer. We held there that a minimum exposure subsequent to June 30, 1973 (one week) was enough to render a post-June 30, 1973 employer liable. Similarly, in *Jones & Laughlin Steel Corp. v. Workmen's Compensation Appeal Board*, 38 Pa.Commonwealth Ct. 466, 393 A.2d 1076 (1978), the claimant had been employed as a miner for approximately 32 years with his last day of employment on July 3, 1973. The claimant's *one day* of post-June 30, 1973 exposure was sufficient to support an award of benefits. *See also Workmen's Compensation Appeal Board v. Commonwealth*, 19 Pa.Commonwealth Ct. 499, 338 A.2d 758 (1975), (a seventeen-day post-June 30, 1973 exposure was sufficient to support an award of benefits). What these and other similar cases demonstrate is that, when determining whether a post-June 30, 1973 employer should be held liable, it is the length of employment, rather than the degree or length of exposure, which is the operative inquiry. This is in full accord with our previous decisions in *Barna v. Workmen's Compensation Appeal Board (Rochester & Pittsburgh Coal Co.)*, 103 Pa.Commonwealth Ct. 536, 520 A.2d 1234 (1987), *appeal granted*, 517 Pa. 627, 538 A.2d 879 (1988), *appeal discontinued*, No. 4 W.D. Appeal Docket 1988, February 8, 1988, where we *rejected* an identical argument, which is now accepted by the majority, that the "legislature could *not* have intended in its 1974 amendment ... to attribute liability to an employer who, within 300 weeks, employs claimant for (as here) eight months, and to exculpate an employer who employs claimant for (as here) thirteen years." (Emphasis added.) We held in *Barna* that that was indeed the legislative intent of the General

Occupational Disease Act, the Act of June 21, 1939, P.L. 566, *as amended*, §§ 1201–1603, 77 P.S. §§ 1201–1603.

Assembly in 1974. *See also Industrial Services Contracting, Inc. v. Wilson,* 28 Pa.Commonwealth Ct. 83, 367 A.2d 377 (1977).

Additionally, since accurate scientific measurement of the degree of medical impairment caused by individual exposures to such insidious injuries, termed "occupational diseases," may not be feasible, the focus should be on the length of exposed employment, a calculation readily discernible by workers' compensation referees rather than on a qualitative determination of sometimes sporadic and different exposures. This is aptly demonstrated by the referee's finding of fact 20 in this case which states:

20. Your Referee finds as a fact that as of September 29, 1987, the claimant was totally disabled due to silicosis, which resulted from the *accumulative effect* of his exposure to a silica and rock dust hazard *during the entire period of time that he was employed* and performing the duties of a blaster/dynamite man out of the Union Hall for various companies, *beginning in 1964 through his last hazardous employment* with Hoosier Engineering Company in November, 1983 .... (Emphasis added.)

It can be seen, through the factual background in this case, that Section 301(c)(2) does not attempt to fix actual, or medical, causation for an occupational disease, but is a practical response to a difficult task by fixing liability on one individual employer. Here, the Claimant was exposed to the disease-causing dust for over nineteen years, and, as the referee found, it was the cumulative effect of that entire period which caused Claimant's disability.

The majority cites *Horne v. Workmen's Compensation Appeal Board (Owens–Corning Fiberglas, AC & S, Inc.),* 98 Pa.Commonwealth Ct. 541, 512 A.2d 765 (1986), *petition for allowance of appeal denied,* 517 Pa. 609, 536 A.2d 1333 (1987), and *Adams Steel Erection, Inc. v. Workmen's Compensation Appeal Board (Klavonick),* 117 Pa.Commonwealth Ct. 290, 543 A.2d 241 (1988), in support of its position that the responsible employer is the one which subjected the claimant to the longest period of exposure. The issues raised in *Horne* were whether the claimant had timely notified the employers of his

disability and whether the claimant had proven exposure to asbestos after June 30, 1973. In *Adams Steel Erection,* the Court considered whether substantial evidence existed to support a finding that the claimant was exposed to an occupational hazard during his employment and whether the exclusion of certain diseases from the provisions of Section 301(c)(2) violated due process. Because the Court did not consider in *Horne* or in *Adams Steel Erection* the precise issue now before us, these cases are not controlling.

In the case before us, H.P. Foley, not Hoosier, was the employer giving the longest period of employment in which Claimant was exposed to the hazard. Accordingly, I would conclude as a matter of law that H.P. Foley is the responsible employer and that Hoosier is not.